FILED, Clerk of the Supreme Court, 30 Oct 2020, **084693**, **SEALED**

SUPREME COURT OF NEW JERSEY
C-181 September Term 2020
084693

In the Matter of the Civil
Commitment of J.D.,
SVP-668-13.

ORDER

(J.D. - Petitioner)

A petition for certification of the judgment in A-005131-17

having been submitted to this Court, and the Court having considered the

same;

It is ORDERED that the petition for certification is denied.


WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this

26th day of October, 2020.

*Heather Baker*

CLERK OF THE SUPREME COURT

FILED, Clerk of the Supreme Court, 22 Jul 2020, **084693**, SEALED



# State of New Jersey

**OFFICE OF THE PUBLIC DEFENDER**
Division of Mental Health Advocacy
Alternative Commitment Unit
31 Clinton Street, 11ᵗʰ Floor
Newark, NJ 07102
Toll Free: (877)285-2844
Tel: (973) 648-3847
Fax: (973) 648-7799

**PHIL MURPHY**
*Governor*

**SHEILA OLIVER**
*Lt. Governor*

**JOSEPH E. KRAKORA**
*Public Defender*

**CARL J. HERMAN**
*Director*

**MICHAEL MANGELS**
*Managing Attorney*

July 10, 2020

SUPREME COURT OF NEW JERSEY
Docket 084693
Appellate Docket A-5131-17T5

|   |   |
|---|---|
| In the Matter of the Civil Commitment of J.D.   SVP-668-13 | : : : : : : |

**BRIEF IN SUPPORT OF A PETITION FOR CERTIFICATION ON BEHALF OF APPELLANT/PETITIONER J.D.**

Joseph E. Krakora, Public Defender
Office of the Public Defender
Division of Mental Health Advocacy
31 Clinton Street, 11ᵗʰ floor
Newark, NJ 07102
(973) 648-3847

Susan REMIS SILVER
Assistant Deputy Public Defender
Attorney ID 001261984
Susan.Silver@opd.nj.gov
(973) 648-3847

i

**FILED,** Clerk of the Supreme Court, 22 Jul 2020, **084693, SEALED**

## TABLE OF CONTENTS

Statement of the Matter Involved................................1

Questions Involved............................................7

Legal Argument................................................8

    Point I

    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT
    HOLD A RULE 104 HEARING ON THE RELIABILITY OF THE
    STATE'S RISK ASSESSMENT METHOD FOR JUVENILE-ONLY SEX
    OFFENDERS................................................8

    Point II

    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT QUALIFIED
    THE TWO STATE DOCTORS AS EXPERTS WHEN BOTH STATE DOCTORS
    LACKED ANY SPECIALIZED KNOWLEDGE ON THE SEXUAL
    RECIDIVISM RISK OF AN ADULT WHO ONLY SEXUALLY OFFENDED
    AS A JUVENILE...........................................12

    Point III

    THE TRIAL COURT ERRED TO QUALIFY THE STATE EXPERTS
    WITHOUT ANY PROOF THAT THEY USED A RELIABLE RISK
    ASSESSMENT METHOD.......................................15

    Point IV

    THE TRIAL COURT VIOLATED J.D.'S DUE PROCESS RIGHTS WHEN
    IT FAILED TO RECOGNIZE HE NOW PRESENTED REDUCED SEXUAL
    RECIDIVIM RISK BECAUSE HE ONLY OFFENDED AS A JUVENILE....18

Reasons for Granting Certification............................20

Conclusion...................................................20

FILED, Clerk of the Supreme Court, 22 Jul 2020, **084693**, SEALED

## TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE**

Clark v. Safety-Klein Corp., 179 N.J. 318 (2004)..............14

Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993)...11, 15

Frye v. United States, 293 F. 1013 (D.C. Div. 1923)..........11

Graham v. Florida, 560 U.S. 48 (2010).....................18, 19

In re Accutane Litigation, 234 N.J. 340 (2018)....11, 12, 15, 17

In the Interest of C.K., 233 N.J. 44 (2018)..........18, 19, 20

In re Civil Commitment of R.F., 217 N.J. 152 (2014).......8, 10

In re Commitment of R.S., 339 N.J. Super. 507 (App. Div. 2001), affirmed, 173 N.J. 134 (2002)..........................10

Kansas v. Hendricks, 521 U.S. 346 (1997)...................18

Miller v. Alabama, 567 U.S. 460 (2012)..................18, 19

Montgomery v. Louisiana, 136 S.Ct. 718 (2016)................18

Roper v. Simmons, 543 U.S. 551 (2005)...................18, 19

State v. Chun, 194 N.J. 54 (2008).............................11

State v. Zuper, 227 N.J. 422 (2017).................18, 19, 20

Townsend v. Pierre, 221 N.J. 36 (2015)...................9, 11

**STATUTES**

N.J.S.A. 30:4-27.24 et seq...........................7, 8, 19

N.J.S.A. 30:4-27.31...........................................12

**COURT RULES**

N.J.R.E. 104.........................................8, 9, 10

N.J.R.E. 702........................................11, 12

FILED, Clerk of the Supreme Court, 22 Jul 2020, **084693**, **SEALED**

## STATEMENT OF THE MATTER INVOLVED

This case involves the State's failure to use an assessment method that can reliably assess the sexual recidivism risk of an adult, like J.D., who only sexually offended as a juvenile.

J.D. is a 27-year-old man whose only sexual adjudication was at age 15 when he sexually assaulted 11-year-old C.G.. (1T 9-4 to 10-5)[1] He got 3 years of probation at New Point program, and when he violated probation, he went to the Juvenile Justice Commission and then the ADTC. (Aa1-3, 7T 34-15 to 19, 80-3 to 8)

On July 30, 2014, J.D. _____ _____ case was dismissed when his PCR case caused dismissal of his _____ _____ _____ father. (Aa4-44). _____ _____ _____ but the knife charge was dismissed. (2T 33-19 to 36-6, 58-10 to 59-11) On March 1, 2016, he was again temporarily committed. _____ _____ was committed. (Aa49-59, 82) _____ 23, 2020, _____ (Pa1-15)

---

[1] 1T is the transcript of the plea hearing, dated 11/6/2009; 2T is the transcript of the plea hearing, dated 1/25/2016; 3T is J.D.'s temporary commitment hearing, dated 2/25/2016; 4T is J.D.'s sentencing hearing, dated 2/29/2016; 5T is J.D.'s supplemental temporary hearing, dated 3/1/2016; 6T is the transcript for the Rule 104 motion, dated 1/24/2018; 7T is the initial commitment transcript, dated 10/30/2018; 8T is the initial commitment transcript, dated 10/31/2018; 9T is the initial commitment transcript, dated 11/1/2018; and 10T is the trial court's bench decision, dated 1/28/2019. Aa refers to appellant J.D.'s Appellate Division appendix. Pa refers to petitioner J.D.'s appendix filed with this Court.

1

**FILED,** Clerk of the Supreme Court, 22 Jul 2020, **084693**, **SEALED**

Dr. Caldwell, J.D.'s renowned expert on risk assessment, said adult tools and risk factors assess internal traits that are "not relevant" to assess juvenile-only sex offenders who generally offend due to external factors. (8T 133-17 to 24) He said a behavioral analysis is needed to assess if a juvenile's sex offense was due to external motives that are likely to resolve. (8T 133-14 to 17, 164-1 to 11) The State experts, Dr. ~~Harris and Dr. Yeoman, did no behavioral analysis to assess if J.D. offended at age 15 for reasons that have now resolved.~~

Dr. Caldwell said accurate recidivism assessments must be anchored in the base rate, the frequency of recidivism in a population. (8T 142-18 to 22, 210-3 to 8) ~~Based on a meta-analysis, the base rate shows a person who only sexually offended as a juvenile will reoffend~~ . (8T 140-2 to 141-21)

Dr. Harris and Dr. Yeoman refused to apply the low sexual recidivism rate of juvenile-only sex offenders, and they called J.D. an "outlier." (7T 73-4 to 6, 9T 54-12 to 20, 73-4 to 6)

Dr. Caldwell said the State doctors had "no scientific basis to call J.D. an "outlier," and said that conduct does not even increase recidivism. (8T 211-21 to 212-21) He said J.D.'s conduct with his father at age 14 was not an "outlier" event and showed no "internal trait," but it was due to his "maladaptive relationship with his father," and his offense at age 15 with C.D. was a "typical juvenile sexual assault." (8T 143-22 to 25)

2

**FILED**, Clerk of the Supreme Court, 22 Jul 2020, **084693**, **SEALED**

He said sexually abused children often abuse other children and

"behave in pathological ways until they get old enough to figure

out those were pathological models" and then use "appropriate

social skills." (8T 145-15 to 20, 160-12 to 20, 164-17 to 20)

~~because juvenile-only sex offenders~~

"overwhelmingly ~~don't reoffend. It was~~

~~extreme easy~~ ~~likelihood to reoffend~~. (8T 218-8

~~, he said courts should only commit when a juvenile is~~

"sexually violent with everyone … every chance he got … right up

until just before his 18th birthday." (8T 75-4 to 5, 157-16 to

~~fit that profile" because he "hasn't~~

sexually assaulted anyone" or been "physical violent" since age

15. (8T 101-6 to 7, 150-7 to 9, 214-3 to 10) Rather, J.D. was

just "a typical juvenile sex offender," and "it's not a close

call." (8T 178-19 to 21) He also said research shows the only

reliable risk factor to predict sexual recidivism for juvenile-

~~only sex offenders is~~

~~cations. (8T 227-13 to 20) He said J.D. does not~~

~~risk factor because~~ ~~sex offen~~

~~a "zero" for criminal~~ (8T 146-15 to 147-12)

Dr. Fabian, J.D.'s expert psychologist, agreed that family

dynamics and development must be considered to assess risk of a

juvenile-only offender. (7T 156-13 to 15)  He said J.D.'s sexual

abuse as a child was very relevant to him sexually abusing other

**FILED,** Clerk of the Supreme Court, 22 Jul 2020, **084693, SEALED**

children. (8T 52-5 to 16)  Dr. Fabian stated that J.D. was only 3 to 5 years old when his teenage male cousin forced objects in his rectum. (7T 156-16 to 157-9, 209-13 to 15, 171-14 to 19) Dr. Fabian said children very often mimic their own sex abuse, and J.D.'s early offending mimicked his abuse. (8T 4-11 to 19)

Dr. Fabian agreed that a proper risk assessment must consider the low recidivism rate of juvenile-only sex offenders. (8T 40-12 to 16) He considered the low recidivism rate and found J.D. was not highly likely to sexually reoffend. (8T 44-2 to 3)

Dr. Harris, the State expert, said J.D. was sexually abused and when 4 or 5, his male cousin forced objects "in his butt." (7T 113-20 to 22)  The record does not support the appellate court's claim that J.D. admitted to 10 to 15 victims. (Pa4-5) As Dr. Harris testified, J.D. had 5 nonconsensual sexual contacts.

First, he said J.D. was 6 when "he forced a boy to touch his private parts and … stick things up his butt." (7T 36-22 to 25)  Dr. Harris said J.D. at age 6 "clearly" had sexual desires, but when asked if a 6-year-old can have a sex drive, he said "I'm not sure what … sex drive means." (7T 113-23 to 115-1)

Second, Dr. Harris said J.D. was 9 when he put forks and spoons in his sister's vagina. (7T 37-6 to 15, 81-23 to 82-2)

Third, Dr. Harris said J.D. admitted that at age 12, he had oral sex with 11-year-old L.P. and dared L.P. "to put a battery up his rectum." (7T 29-18 to 30-1, 81-5 to 10, 110-23 to 111-6)

4

FILED, Clerk of the Supreme Court, 22 Jul 2020, 084693, SEALED

Fourth, Dr. Harris said J.D. was 14 when he held a knife and "forced his father to fellate him." (7T 31-25 to 32-1)

Fifth, Dr. Harris said J.D.'s only adjudication was forcing sex on C.G. at age 15. (1T 9-18 to 25, 7T 28-1 to 9, 84-4 to 6)

Dr. Caldwell said J.D.'s offenses must be understood in the context of his developmental history and environment. (8T 164-1 to 8)  He said Dr. Harris falsely assumed J.D.'s childhood acts resulted from "deviant sexual arousal," but "the professional consensus" is that most juvenile sex offenders are motivated by "situational variables like … being abused" or being in a "chaotic family" that violates interpersonal boundaries. (8T 199-17 to 200-5) He said experts agree these situational factors are "temporary," and as a juvenile matures, "the vast majority" completely stop their sexual misconduct. (8T 200-1 to 201-4)

Dr. Caldwell said J.D.'s childhood was filled with "severe abuse and violence in the home." (8T 83-21 to 84-12) His father called him "an abomination" for being gay and tried "to convert him to heterosexuality," causing such "extreme distress" J.D. "seriously considered suicide." (8T 86-24 to 87-6) J.D. was resentful and angry and "believed for a period … that if he could force his father to have a homosexual experience, he would … be more accepting…." (8T 88-7 to 12) He said J.D. has matured, now knows he was wrong and would not repeat his conduct. (8T 88-16 to 90-2)  The trial court never analyzed whether J.D.'s fluid and evolving nature as a juvenile now made him less likely to

**FILED,** Clerk of the Supreme Court, 22 Jul 2020, **084693**, SEALED

reoffend as an adult.  The trial court ignored the science that
shows a vast majority of juvenile sex offenders never sexually
offend as adults. (8T 117-14 to 17, 133-9 to 13, 10T 89-6 to 17)

　　　The trial and appellate court said Dr. Harris was an expert
in other hearings and said Dr. Yeoman was a psychologist (10T
43-11 to 12, 57-17 to 19, Pa10), but neither court recognized
this case needed specialized expertise because different risk
factors determine sexual recidivism risk of a juvenile-only sex
offender. (8T 132-25 to 133-21, 137-16 to 138-21, 227-13 to 20)

　　　Neither State doctor had this expertise.  Dr. Harris was
unfamiliar with basic concepts in assessing juvenile-only sex
offenders. (8T 202-9 to 204-14) Dr. Yeoman admitted this was the
first time he ever assessed a juvenile-only sex offender. (9T
11-2 to 21) He falsely claimed no research existed on juvenile-
only sex offender risk when literally hundreds of such studies
exist. (8T 181-6 to 14) The trial court committed legal error
when it qualified Dr. Yeoman when he lacked "expert
knowledge." (9T 13-1 to 5) Obviously, Rule 702 requires expert
knowledge. The trial court erred to qualify doctors who lacked
the relevant expertise to assess the sexual recidivism risk of a
juvenile only sex offender. (7T 19-5 to 11, 9T 13-1 to 4)

　　　The trial court ignored the record that shows J.D. has
matured. All four experts recognized J.D. has
recently ......... 26-10 to 14, 8T 14-

6

FILED, Clerk of the Supreme Court, 22 Jul 2020, 084693, SEALED

18 to 25, 25-21 to 23, 45-24 to 46-2, 89-6 to 90-4, 132-12 to
19, 148-5 to 14, 9T 104-19 to 24)   The record shows J.D. has not
engaged in any sexual misconduct, criminal behavior or physical
violence since he was age 15. (8T 213-25 to 214-10, 9T 105-15 to
106-1)   The trial court committed him without considering his
substantially reduced risk now he matured into adulthood.

The trial court simply adopted the State's deeply flawed
risk analysis without determining whether the State's assessment
method is reliable to evaluate recidivism risk of a juvenile-
only offender like J.D..  The trial court never made fact-
findings on the reliability of State's assessment method that it
then used to subject J.D. to possibly life-long SVPA commitment.

### Questions Presented

1. Whether an individual can be committed under the Sexually
   Violent Predator Act, N.J.S.A. 30:4-27.24 et seq., without
   the trial court considering the science that shows that
   juvenile-only sex offenders like J.D. have a significantly
   lower sexual recidivism rate and cannot be assessed using
   adult actuarial tools or adult risk factors;

2. Whether the State doctors could testify as experts without
   expertise in assessing the sexual recidivism risk of
   juvenile-only sex offenders;

3. Whether the trial court engaged in legal error when it
   applied an incorrect legal standard in denying J.D. a
   pretrial hearing under N.J.R.E. 104 on the reliability of
   the State's method for assessing the sexual recidivism risk
   of juvenile-only sex offenders; and

4. Whether the trial court violated J.D.'s due process rights
   when it dismissed the science on juvenile brain development
   and failed to recognize that J.D. had a significantly
   reduced sexual recidivism risk as a juvenile-only offender.

7

**FILED,** Clerk of the Supreme Court, 22 Jul 2020, **084693**, SEALED

**Point I**

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT HOLD
A RULE 104 HEARING ON THE RELIABILITY OF THE STATE'S RISK
ASSESSMENT METHOD FOR JUVENILE-ONLY SEX OFFENDERS.**

The assumption of every commitment under the Sexually
Violent Predator Act, <u>N.J.S.A.</u> 30:4-27.24 <u>et</u> <u>seq.</u>, is that the
State has a risk assessment method that works and that can give
a reliable finding on whether a person is "highly likely to
sexually reoffend." <u>In re Civil Commitment of R.F.</u>, 217 N.J.
152, 173 (2014).  But the State never proved it had a reliable
method to assess the risk of a juvenile-only offender like J.D..

J.D. moved for a hearing under <u>N.J.R.E.</u> 104 to challenge
the admissibility of the State's risk assessment method for
juvenile-only sex offenders. (Aa83-84) J.D. filed certifications
from three renowned experts in sex offender risk assessment, Dr.
Hart (Aa151-154), Dr. Prentky (Aa245-254), and Dr. Caldwell
(Aa293-302) to proffer their testimony.  State's assessment method improperly used adult risk factors
that are irrelevant to assess J.D.'s recidivism risk because he
only offended as a juvenile. (Aa152-153, 246-253, 295-301)

The State experts relied on J.D.'s experts when they
assessed J.D. (Aa317-321, 576, 635)  Dr. Hart developed the SVR-
20 that Dr. Yeoman, the State psychologist, used to assess his
risk. (Aa152, 9T 11-25 to 12-2) Drs. Prentky and Caldwell wrote
articles Dr. Yeoman cited to assess J.D. (Aa285-292, 641) Dr.
Caldwell wrote the Adolescent Guidelines to assess juvenile-only

**FILED**, Clerk of the Supreme Court, 22 Jul 2020, **084693**, **SEALED**

sex offenders. (Aa294) Dr. Harris, the State's expert, even asked Dr. Caldwell for advice on how to assess J.D.'s risk, but Dr. Caldwell said he misunderstood his advice and evaluated J.D. using an approach "with no scientific basis." (Aa299-301).

The trial court's denial of the Rule 104 hearing deprived J.D. of any opportunity to present Drs. Hart, Prentky, and Caldwell at a pretrial hearing. (Aa85) These experts questioned the State doctors' expertise and sharply criticized their methods to diagnose J.D. and assess his risk to reoffend.

The trial court misstated the law when it held that Rule 104 hearings are never available to challenge the admissibility of evidence and never available before a witness testifies. (6T 20-14 to 25, 22-2 to 23-6, 24-9 to 12)  In fact, Rule 104 is designed to offer pretrial hearings on evidence admissibility.

In _Townsend v. Pierre_, 221 N.J. 36 (2015), this Court held "_N.J.R.E._ 104 prescribes a procedure by which a trial court may 'assess the soundness of the proffered methodology and the qualifications of the expert.'" _Id._, at 54 n. 5 (cites omitted).

The Appellate Division agreed that "the better practice is to address the admissibility of an expert's testimony at such a hearing," but said "The decision whether to conduct a Rule 104 hearing is discretionary." (Pa8)  This falsely assumed that the trial court applied the correct legal standard to J.D.'s Rule 104 motion and that it had ruled on the merits of J.D.'s motion.

9

FILED, Clerk of the Supreme Court, 22 Jul 2020, 084693, SEALED

~~This was ... the case. The ... applied the wrong legal ... and ... the merits of J.D.'s motion J.D. was entitled ... apply the correct legal standard ...~~. The trial court's misunderstanding of law prevented J.D. from having any pretrial hearing on the admissibility of the State's assessment method, and even at J.D.'s trial, the trial court never ruled on the admissibility of the State's method to assess his risk.

J.D. was harmed by the denial of his Rule 104 motion because appellate courts grant de novo review of scientific evidence admitted in a Rule 104 hearing, In re Commitment of R.S., 339 N.J. Super. 507, 531 (App. Div. 2001), affirmed, 173 N.J. 134 (2002), but defer to fact-finding at trial. R.F., 217 N.J. at 174. The trial court simply accepted the State doctors' testimony without examining the reliability of their assessment methods, and the Appellate Division deferred to its findings.

~~J.D. proffered testimony from three ... experts, Drs. Hart, Prentky, and Caldwell, who said the State experts used in ... assessment methods, made improper ... diagnoses based on juvenile conduct, and failed to use risk relevant factors to assess juvenile-only sex offenders.~~ The trial court erred to deny a Rule 104 hearing to address the State's invalid assessment methods and then failed to correct the matter because the trial judge never addressed the reliability (or lack of

**FILED,** Clerk of the Supreme Court, 22 Jul 2020, **084693**, **SEALED**

reliability) of the State's risk assessment method at trial.

Under N.J.R.E. 702, a witness must have "sufficient expertise" and only testify in a field "at a state of the art such that an expert's testimony could be sufficiently reliable." Townsend v. Pierre, 221 N.J. at 53.

method "must bear its burden to 'clearly establish'… [it] … meets … a standard of general acceptance" with a "'sufficient scientific basis to produce uniform and reasonably reliable results.'" State v. Chun, 194 N.J., 54, 91 (2008), cert. denied, 555 U.S. 825 (2008), quoting Frye v. United States, 293 F. 1013 (D.C. Div. 1923).[2] The trial court erred when it failed to rule on the reliability of the State's assessment method.

The State never proved that its risk assessment method for juvenile-only sex offenders had any scientific basis and or that it could "produce uniform and reasonably reliable results." Chun, 194 N.J. at 91. Nor did the State show that its approach was accepted by the expert community. This Court should grant review so it can direct the trial court to determine whether the State's risk assessment method for juvenile-only sex offenders was sufficiently reliable to support J.D.'s SVPA commitment.

---

[2] New Jersey courts applied the Frye standard when J.D.'s motion was denied but have since adopted expert testimony standards in Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993). In re Accutane Litigation, 234 N.J. 340, 347-48 (2018).

FILED, Clerk of the Supreme Court, 22 Jul 2020, 084693, SEALED

### POINT II

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT QUALIFIED THE TWO STATE DOCTORS AS EXPERTS WHEN BOTH STATE DOCTORS LACKED ANY SPECIALIZED KNOWLEDGE ON THE SEXUAL RECIDIVISM RISK OF AN ADULT WHO ONLY SEXUALLY OFFENDED AS A JUVENILE.**

A SVPA commitment needs expert testimony. N.J.S.A. 30:4-27.31.  But the State experts lacked relevant expertise to assess J.D.'s recidivism risk.  Dr. Harris and Dr. Yeoman did not meet N.J.R.E. 702 requirements because they lacked "sufficient expertise to offer the intended testimony." In re Accutane Litigation, 234 N.J. 340, 349 (2018).  Neither doctor had "knowledge, skill, experience, training or education," N.J.R.E. 702, to assess the risk of a juvenile-only offender.

Dr. Harris wrote no publications or articles on juvenile sex offenders. (7T 14-10 to 12)   He gave no indication that he ever received training to assess risk of a juvenile-only sex offender like J.D..  When Dr. Harris was asked about his training, he only gave a nonresponsive answer that he had worked with those with borderline personality disorder. (7T 15-8 to 11)

Dr. Harris admitted that he did no research on "any aspect of juvenile sex offenders" (7T 15-25 to 16-5), and he was not familiar with relevant research.  Dr. Caldwell said "research over the last decade or so" made clear the "dynamics that produce sexual misconduct" in a juvenile-only sex offender. (8T 133-9 to 13)  Dr. Harris had no familiarity with that research.  Dr. Harris only said "30-plus years ago," he did a hospital

12

**FILED**, Clerk of the Supreme Court, 22 Jul 2020, **084693**, SEALED

rotation on adolescents. (7T 15-20 to 24) That rotation gave no expertise to assess J.D., an adult who offended as a juvenile.

Dr. Harris showed a lack of expertise when he needed to ask Dr. Caldwell, J.D.'s expert, how to assess J.D.'s risk. (8T 202-9 to 22) Dr. Caldwell said Dr. Harris asked basic questions like "what risk factors" apply and "basic questions" on the research. (8T 202-11 to 22, 204-11 to 14) Dr. Caldwell said Dr. Harris demonstrated "he is not familiar with what's acceptable in terms of evaluating juvenile-only sex offenders." (8T 202-2 to 6)

~~The trial court and Appellate Division failed~~ that this case required experts who had specialized knowledge on assessing sexual recidivism risk of juvenile-only sex offenders. ~~The trial court abused its discretion in qualifying Dr. Harris~~ ~~as an expert~~ because he was a ~~psychiatrist~~ (7T 19-5 to 11) ~~This did not indicate he had any specialized expertise on~~ ~~sexual recidivism risk of juvenile-only sex offenders like J.D..~~ ~~State's expert psychologist, also lacked~~ ~~relevant experience. Dr. Yeoman admitted this case was the~~ ~~and only time that he ever evaluated a juvenile-~~ ~~offender to determine his recidivism risk. (9T 11-12 to 21)~~ ~~familiar with relevant research~~ ~~Dr. Caldwell, as far as I know there isn't much of anything~~ ~~there. (9T 9-1 to 19) Dr. Caldwell, J.D.'s risk assessment~~ ~~expert, and that is~~ standards

FILED, Clerk of the Supreme Court, 22 Jul 2020, 084693, SEALED

of studies" exist on relevant sexual recidivism risk factors for "adults whose last offense was as a juvenile." (8T 181-6 to 14)

The trial court even applied the wrong legal standard when it held Dr. Yeoman's lack of "adequate knowledge" did not bar him from offering expert testimony. (9T 12-25 to 13-5) The trial court engaged in legal error when it assumed that Dr. Yeoman could testify as an expert even without "adequate knowledge."

The trial court erred when it held that Dr. Harris could testify as an expert because he was a psychiatrist (7T 19-5 to 11) and that Dr. Yeoman could testify as an expert because he was a psychologist. (9T 12-25 to 13-10) As this Court held in Clark v. Safety-Klein Corp., 179 N.J. 318 (2004), a witness' expert qualification does not depend on whether he has "a professional license or degree" but whether he has "requisite specialized knowledge, training or experience…." Id. at 337.

The trial court erred to allow Dr. Harris and Dr. Yeoman to testify on an issue that exceeded the scope of their expertise. It was legal error when the trial court applied the wrong legal standard [illegible] pretrial hearing to challenge the [illegible] recidivism risk of juvenile only sex offenders, and it was an abuse of discretion when the judge overruled the objection at trial to the doctors [illegible] J.D. now face indefinite commitment based on testimony [illegible] State doctors who lacked relevant expertise and

14

FILED, Clerk of the Supreme Court, 22 Jul 2020, **084693**, SEALED

## POINT III

**THE TRIAL COURT ERRED TO QUALIFY THE STATE EXPERTS WITHOUT ANY PROOF THAT THEY USED A RELIABLE RISK ASSESSMENT METHOD.**

This Court in <u>Accutane</u> held a trial court must only admit expert testimony that "rests on a reliable foundation … based on valid scientific principles." 234 N.J. at 384 (quoting <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579 (1983)). The State failed to show that its experts used a reliable risk assessment method.

The Accutane Court adopted the <u>Daubert</u> factors for courts to consider when ruling on admissibility of expert testimony:

1. Whether a scientific method can be or has been tested;

2. Whether a scientific method has been peer-reviewed;

3. Whether there is a known or potential error rate and whether standards control the method's operation; and

4. Whether the expert community accepts the method.

234 N.J. at 384. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ motion when it failed to rule on whether the State's ▓▓▓▓▓▓ assess sexual recidivism risk of juvenile-only offen▓▓▓▓▓▓▓▓▓▓ards.

Dr. Harris offered no research to validate his assessment method. (7T 16-3 to 5) He had no information on his error rate. (7T 11-14 to 12-3) Dr. Harris was also unfamiliar with how professionals assess recidivism risk of juvenile-only sex offenders. When asked if a risk assessment method existed, he said, "No … that's the problem." (7T 70-23 to 71-3) This is not at all true. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ assess juvenile-only

15

FILED, Clerk of the Supreme Court, 22 Jul 2020, **084693**, SEALED

~~offenders by using a behavioral analysis to determine if their~~
~~sex offending was due to a penalty factor like being abused or~~
~~being in a chaotic family with~~ interpersonal boundaries. (8T
199-20 to 201-1) He said examiners must assess if the juvenile's
sex offending was due to his immature brain characteristics that
will resolve. (8T 160-24 to 162-11, 199-20 to 200-12) Dr. Harris
did no behavioral analysis to assess J.D.. (8T 209-10 to 210-25)

Dr. Caldwell said a juvenile-only sex offender risk
assessment must also be informed by the very low recidivism base
rate. (8T 210-3 to 12)  Dr. Harris did not ground his assessment
on the low base rate. (8T 209-10 to 210-14) Instead, he created
an "outlier" theory based on a misunderstanding of the advice
Dr. Caldwell gave him. (7T 73-6 to 74-6)  Dr. Caldwell said J.D
had no outlier conduct, and Dr. Harris had no "scientific basis"
to ignore the low base rate for juvenile-only offenders. (8T
178-19 to 21, 212-6 to 21) He also said inter-familial offenders
like J.D. show lower sexual recidivism. (8T 143-2 to 14)

Dr. Caldwell said Dr. Harris' unproven trajectory of life
theory falsely assumed that J.D. offended "through two stages of
development" due to sexual conduct at ages 6, 9, 10 and "into
his teens" (7T 59-1 to 60-11), but the research shows that only
those who offend as both a juvenile and an adult have higher
sexual recidivism risk. (8T 196-1 to 198-1) J.D. does not fit
that pattern since he last offended at age 15. (8T 101-6 to 7)

16

FILED, Clerk of the Supreme Court, 22 Jul 2020, 084693, SEALED

Dr. Harris failed the Accutane expert testimony standard because he lacked specialized knowledge on juvenile-only sex offender risk, used an untested method unsupported by research, relied on unproven "outlier" and "trajectory of life" theories, lacked any track record for reliability, and used a method with no acceptance by professionals in the field. Accutane, 234 N.J. at 384, (7T 11-14 to 12-3, 8T 197-1 to 20, 202-2 to 6, 209-10 to 211-24). ~~The trial court abused its discretion~~ when it failed to strike Dr. Harris' testimony as unreliable and inadmissible.

Dr. Yeoman, the State expert psychologist, used the same unproven "outlier" and "trajectory of life" theories, erred by ignoring the low recidivism base rate and by applying adult risk factors with no relevance to juvenile-only offenders like J.D.. (9T 35-3 to 6, 73-1 to 6, 76-21 to 25)  He gave no scientific basis to support his approach. ~~The trial court abused its discretion in~~ admitting Dr. Yeoman's testimony that was not based on sound scientific principals and had no empirical basis.

The trial court abused its discretion when it failed to strike Dr. Harris' and Dr. Yeoman's testimony because neither doctor had any scientific basis to assume J.D. was "an outlier," they had no evidence to assume J.D.'s life trajectory showed high risk, no basis to assume juvenile-only sex offender risk factors and recidivism rates do not apply to J.D., and no basis to assume he could be assessed as if he offended as an adult.

17

FILED, Clerk of the Supreme Court, 22 Jul 2020, 084693, SEALED

## POINT IV

**THE TRIAL COURT VIOLATED J.D.'S DUE PROCESS RIGHTS WHEN IT FAILED TO RECOGNIZE HE NOW PRESENTED REDUCED SEXUAL RECIDIVIM RISK BECAUSE HE ONLY OFFENDED AS A JUVENILE.**

The trial court failed to consider that the science shows different risk factors cause juvenile and adult sex offending, and that juvenile-only offenders have a very reduced recidivism risk. The trial court cited Kansas v. Hendricks, 521 U.S. 346 (1997), an adult sex offender case, and said "past instances of violent behavior are an important indicator of future violent tend....." (10T 14-5 to 9) This is .......... for juvenile-only sex offenders like J.D. because the science shows that the vast majority do not reoffend as adults. (8T 140-2 to 141-21) J.D is 27-years-old and last offended at age 15. The trial court failed to recognize that he stood before the court with a significantly reduced risk because he only sexually offended as a juvenile.

Both the United States Supreme Court and this Court direct trial courts to consider the "transient" nature of juvenile offending when making confinement decisions. Montgomery v. Louisiana, 136 S.Ct. 718, 733, 736 (2016); Miller v. Alabama, 567 U.S. 460, 476 (2012); Graham v. Florida, 560 U.S. 48, 68 (2010); Roper v. Simmons, 543 U.S. ..... Interest of C.K., 233 N.J. 44, 69-70 (2018); State v. Zuper, 227 N.J. 422, 429 (2017). ............ eniles often offend due to an immature brain and impulsivity that is later

18

**FILED**, Clerk of the Supreme Court, 22 Jul 2020, **084693**, SEALED

~~juvenile offending before imposing possibly life-long terms.~~

These cases rest on scientific research directly relevant
to the risk analysis required in the Sexually Violent Predator
Act, N.J.S.A. 30:4-27.24 et seq., that directs a trial court to
consider whether a juvenile-only offender is now less than
highly likely to **sexually** reoffend once they mature into adults.

The trial court ignored the ~~science~~
less likely to reoffend now that he has matured.  The trial
judge never squared the fact that 3-5% of juvenile sex offenders
reoffend (8T 140-2 to 141-21) with finding J.D., who offended at
age 15, is somehow "highly likely" to reoffend. (10T 103-1 to 9)

The trial court claimed that the juvenile brain cases are
not applicable in the SVP context which require annual reviews.
(10T 9-5 to 12-7)  But ~~these cases are on point because the~~
trial court committed J.D. based on his past conduct at age 14
or 15 and never addressed his maturation into adulthood.  By
adopting a dismissive approach to the science, the trial court
evaded its responsibility to consider whether J.D. offended as a
juvenile for reasons that resolved now that he is an adult.

In In re C.K., 233 N.J. 44 (2018), ~~a Megan's Law case, this~~
Court cited ~~Miller, Graham, and J.D.B. v. Carol~~ that were based on
juvenile brain research, and said due process required a court
~~to consider the research to assess recidivism~~ risk. Id. at 68-
70. It is now time to apply this analysis to SVPA commitments.

**FILED**, Clerk of the Supreme Court, 22 Jul 2020, **084693**, SEALED

## Reasons for Granting Certification

J.D. requests review because the trial court ruled on his sexual recidivism risk without incorporating the undisputed scientific knowledge that juveniles have immature brains that often cause them to act impulsively and recklessly, but they generally stop their misconduct once they mature into adults.

This Court has already held that those who offend as juveniles must be viewed as categorically different from adults in sentencing and Megan Law decisions. In re C.K., 233 N.J. at 469-70; State v. Zuper, 227 N.J. at 429. It is time to extend this holding to juvenile-only sex offenders who face commitment.

Review is also necessary to ensure only qualified experts who use reliable risk assessment methods can testify on the sexual recidivism risk of a juvenile-only sex offender.  This Court should grant review to direct the trial courts to require that the State prove its assessment method can accurately and reliably assess recidivism risk of juvenile-only sex offenders.

## Conclusion

Based on the above, J.D. respectfully requests that this Court grant his Petition for Certification.

Respectfully submitted,
Joseph E. Krakora
Counsel for J.D.

By:   *Susan Remis Silver*
Susan Remis Silver
Assistant Deputy Public Defender
Attorney ID 001261984

Dated: July 10, 2020

FILED, Clerk of the Supreme Court, 22 Jul 2020, **084693**, **SEALED**

Certification

I certify that this Petition for Certification presents a
substantial issue and is being filed in good faith and not for
purposes of delay.

*Susan Remis Silver*

Susan Remis Silver
July 10, 2020                    Assistant Deputy Public Defender

21